WHITE *v.* HOENIGHAUSEN.

BROKERS—COMMISSIONS—EXCLUSIVE LISTING—EVIDENCE—DIRECTED
VERDICT.

> In an action by a real estate broker for commissions on the
> sale of a house and lot sold by defendant more than one
> month after listing same with plaintiff, where plaintiff
> claimed an exclusive listing, but admitted that the agree-
> ment drawn up by him did not truly represent the agree-
> ment between himself and defendant, and the latter testi-
> fied that she understood that plaintiff had one month in
> which to make the sale, a judgment should have been
> directed in favor of defendant.

Error to Wayne; Marschner (Adolph F.), J.   Sub-
mitted June 11, 1920.   (Docket No. 76.)   Decided
September 30, 1920.

Assumpsit in justice's court by Colby E. White
against Louise Hoenighausen for commissions on the
sale of certain real estate.   There was judgment for
defendant, and plaintiff appealed to the circuit court.
Judgment for plaintiff.   Defendant brings error.
Reversed.

*Bishop & Kilpatrick* (*R. R. Weaver*, of counsel), for
appellant.

MOORE, C. J.   This case was commenced in justice's
court to recover $225 for commissions which plaintiff
claimed he had earned.   The defendant had judgment
in justice's court in her favor.   The plaintiff appealed
to the circuit court.   After the testimony of plaintiff
was in defendant moved for a directed verdict.   This
motion was overruled.   The case was submitted to a
jury which rendered a verdict for $231.58.   Defend-

ant made a motion for judgment *non obstante vere-dicto*. This motion was denied. A motion was made for a new trial for various reasons, among them that the verdict was against the clear weight of the evidence. The case is brought here by writ of error. There has been no brief filed on the part of the appellee. After reading the record this does not occasion us any surprise.

The plaintiff claims he is entitled to the 3% commission based upon a sale made to Mrs. Sloan, who bought the property of the defendant, April 6, 1919. He presents as his contract Exhibit 1 which is a small printed card reading:

"February 13th, 1919. Colby E. White. Exclusive agreement. In consideration of your agreement to list this property in your records, and to use your efforts to find a purchaser, I hereby appoint you my broker exclusively for one month from date hereof, and thereafter until you receive from me a ten days' written notice, terminating this agreement, to sell my property as described on reverse hereof, for the sum of $7,500, payable $3,000, or upon any other price, terms or exchange to which I consent. If such property is sold before the expiration of this agreement by you, or any other person, or if it be sold within three months after such expiration to any person with whom you have had negotiations, I agree to pay you the Detroit Real Estate Board commission of 3 per cent. In event of such sale I will execute and deliver to such purchaser a deed for said property with full covenants of warranty and release of dower, except mortgage. I represent the title to said property to be good and will furnish an abstract of title of the same to date of sale. You are hereby authorized to place a 'For Sale' sign on said property, and to remove all other signs.

(Signed) "LOUISE HOENIGHAUSEN."

The defendant was called as an adverse witness and testified in substance that when the cards were presented to her to sign that she did not have her glasses,

but by holding them at arms' length she could read some of the provisions contained therein and refused to sign them for the reason that it was agreed that unless plaintiff made a sale for her in one month that he was not to be paid any commission, and that plaintiff then undertook to change the cards so that they would express her agreement with him by writing one month in place of two months and by striking out the words "and thereafter until you receive from me a ten days' written notice terminating this agreement" and also by striking out the words "or if it be sold within three months after such expiration to any person with whom you have had negotiations." She said he made these changes with a fountain pen and gave her one of the cards which she produced in court with the words stricken out as above stated. She further testified that she supposed he had made the changes on the other card before she attached her signature to it. The defendant's husband testified he saw the card given to the defendant the evening of the day it bore date, and it then had the erasures as they appeared at the trial.

A Mrs. Sloan bought the house April 6th. Mrs. Gibb was living in the house at that time. Mrs. Sloan was a witness. She testified in part:

"We went and looked at this house. I asked Mrs. Gibb who the owner was and she called Mrs. Hoenighausen, who came down and met us there, and Mrs. Hoenighausen said that Mr. White had nothing to do with it, and that she would not sell through Mr. White, so we purchased through Mrs. Hoenighausen as the owner."

The plaintiff admitted the defendant would not sign the cards until he had changed them from two months to one, but denied that he made the other erasures on the card produced by the defendant. When pressed he testified:   (We quote from his testimony.)

"At the time the signed card was delivered to me, there was a difference between Mrs. Hoenighausen and I between two months and one.

"*Q.* Yes, and you were distinctly told that you had one month to sell the place?

"*A.* She told me that, but she said after the one month is up, if you show any action on it, I will let you have it further.   *   *   *   It says on my card one month and thereafter until I receive written notice; that month would be up March 13th.  Up to that time I had not sold the property.   *   *   *   I did scratch out that 'two months' and put in 'one month,' there had to be something in there, one month or two months or something, or it could be terminated the next day by written notice."

The plaintiff's own testimony discloses that he did not write the cards so that they truly represented the agreement between himself and his client.   See *Boston Piano & Music Co.* v. *Pontiac Clothing Co.*, 199 Mich. 141; *McCulley* v. *Rivers*, 203 Mich. 417.

The trial judge should have directed a verdict in favor of defendant.   Judgment is reversed and a new trial ordered, with costs to the defendant.

STEERE, BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.